UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

James McCarthy

     v.                           Civil No. 1:21-cv-668-JL
                                     Opinion No. 2023 DNH 039

Medicus Healthcare Solutions, LLC

**MEMORANDUM ORDER**

At issue in this Fair Labor Standards Act collective action suit is the correct standard under which to evaluate a motion for conditional certification of an employee collective. Plaintiff James McCarthy moves to conditionally certify such a collective of employees of Defendant Medicus Healthcare Solutions, LLC. He alleges that Medicus had a common pay practice or plan that resulted in him and similarly situated physician recruiters not receiving overtime wages for all earned overtime hours, in violation of the FLSA. This court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 216(b).

Medicus objects, arguing that the late procedural posture of McCarthy's motion requires the court to apply a stricter conditional certification standard, and under that standard, McCarthy cannot establish that other similarly situated employees were subject to the same unlawful pay policy. Medicus further highlights the fact that no other putative plaintiffs have opted into this suit as compelling evidence that certification is inappropriate. After consideration of the parties' submissions, the court grants the motion. Notwithstanding the timing of McCarthy's motion, the court applies the more lenient standard and finds that he has made a modest factual showing that he and other

recruiters were the victims of at least one common policy or plan that violated the FLSA. McCarthy has thus demonstrated that other similarly situated employees exist who should receive notice of this lawsuit.

**I.**   **Applicable legal standard**

Under the FLSA, an employee may bring an action on behalf of himself "and other employees similarly situated." § 216(b). This type of suit – referred to as a "collective action" – is different than a class action in that certifying a collective does not depend on the strictures of Federal Rule of Civil Procedure 23. Moreover, while a class under Rule 23 automatically includes all unnamed members who fall within the class definition (and thus requires those who do not wish to participate to opt out), "the FLSA provides that those individuals who are 'similarly situated' to the plaintiff must affirmatively opt into a collective action if they wish to participate." Camp v. Bimbo Bakeries USA, Inc., No. 18-CV-378-SM, 2019 WL 440567, at *1 (D.N.H. Feb. 4, 2019) (McAuliffe, J.).

The First Circuit Court of Appeals has not adopted a procedure for certifying an FLSA collective action. Courts within the circuit, however, generally address certification in two stages. See, e.g., Camp, 2019 WL 440567, at *2; Prescott v. Prudential Ins. Co., 729 F. Supp. 2d 357 (D. Me. 2010) (Hornby, J.); Clark v. Cap. Vision Servs., LLC, No. 22-CV-10236-DJC, 2022 WL 2905356, at *1 (D. Mass. July 22, 2022) (Casper, J.); Macklin v. Biscayne Holding Corp., No. 19-561WES, 2020 WL 6397929, at *7 (D.R.I. Nov. 2, 2020) (Sullivan, M.J.). At the first stage, "plaintiffs bear the light

burden of demonstrating that there is a reasonable basis for their claim that there are other similarly situated employees." Barber v. Bauer Hockey, LLC, No. 21-cv-742-SE, 2022 WL 10598579, at *2 (D.N.H. Oct. 18, 2022) (Elliot, J.) (quoting Camp, 2019 WL 440567, at *2).  "The standard is satisfied by 'making a modest factual showing or asserting substantial allegations that the putative class members were together the victims of a single decision, policy, or plan that violated the law.'"  Id. (quoting Clark, 2022 WL 2905356, at *2).  If the plaintiff makes this showing, the court "conditionally" certifies a collective.  The "sole consequence of conditional certification [under § 216] is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court."  Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 74 (2013).

At the second stage, typically after the defendant moves to decertify the collective, the court makes "a factual determination as to whether there are similarly situated employees who have opted in."  Barber, 2022 WL 10598579, at *2 (quoting Camp, 2019 WL 440567, at *2).  In making this factual determination, the court considers the "factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action."  Id.  "If the court finds then that employees are not 'similarly situated,' it will decertify the [collective] and dismiss the opt-in plaintiffs without prejudice."  Id.

## II.   **Background**

The court recites the relevant factual background from McCarthy's complaint,[1] and other evidence submitted with the parties' briefing.[2]  Medicus is a New Hampshire limited liability company based in Windham, New Hampshire.[3]  It provides nationwide physician recruitment and placement services, medical staffing solutions, "locum tenens" staffing services, and other consulting services to healthcare organizations and providers.[4] To carry out some of these services, Medicus employs physician recruiters.[5]  McCarthy was a physician recruiter for Medicus from September 2017 to November 2018.[6] Medicus determined every element of a physician recruiter's job, including the work schedule, procedures to use, scripts for recruiting calls, templates for emails, and other

---

[1] First Amended Complaint (doc. no. 17).

[2] The parties cross move to strike certain supporting documents relating to their conditional certification briefing.  McCarthy moves to "exclude" Medicus' opposition brief entirely because it allegedly relies on "manufactured," false evidence.  See doc. no. 50.  Medicus moves to exclude the testimony and declaration of McCarthy's attorney, Andrew W. Dunlap, which McCarthy submitted with his reply memorandum.  See doc. no. 48.  The court denies both motions without prejudice.  Neither Medicus' opposition nor Attorney Dunlap's declaration will be stricken.  As shown below, however, the court does not rely on Attorney Dunlap's declaration or the evidence from Francis O'Hearn's declaration in resolving the conditional certification motion.

[3] FAC at ¶ 17.  Medicus had other offices in Denver, Colorado and Houston, Texas that are now closed.  See Medicus Obj. (doc. no. 42-1) at 12, n.8.

[4] FAC at ¶ 23.

[5] Id. at ¶ 24.

[6] Id. at ¶¶ 2, 10, at 25.

associated work duties.[7]  Recruiters like McCarthy also performed their work according to "well-established procedures," "established guidelines[,] and predetermined parameters" set by Medicus.[8]

Medicus classified McCarthy as a "non-exempt"[9] employee under the FLSA and paid him a salary plus commissions.[10]  By classifying McCarthy and other recruiters as non-exempt, according to McCarthy, Medicus knew that under the FLSA, it needed to pay such non-exempt employees overtime wages.[11]  McCarthy alleges that Medicus required him to regularly work over 40 hours a week and knew that his work as a recruiter required him to work over 40 hours in a workweek.[12]  It provided him overtime pay for "approved" hours or work, but McCarthy worked additional overtime hours for which Medicus did not provide overtime pay.[13]  Medicus also knew that aside from the approved overtime pay, McCarthy and other recruiters were working over 40 hours a

---

[7] Id. at ¶ 31.

[8] Id. at ¶¶ 33-35.

[9] The FLSA and its implementing regulations provide that certain categories of employees are "exempt" from the statute's overtime pay requirements.  See, e.g., 29 U.S.C. § 213; 29 C.F.R. § 541, et seq.  McCarthy does not contend that Medicus misclassified him or any other putative plaintiff as a non-exempt employee.

[10] FAC at ¶¶ 3, 26.

[11] Id. at ¶¶ 39-40, 49.

[12] Id. at ¶¶ 11-12, 81.  McCarthy further alleges that the Medicus' "recruiters were required to regularly work 10 or more hours in a day and five days a week."  Id. at ¶ 42.

[13] Id. at ¶¶ 11, 44, 50-52.

week and not receiving overtime pay for that work.[14]  Medicus required McCarthy to

document approved overtime work and pay, and kept accurate records of this work and

pay.[15]  The complaint alleges, however, that Medicus did not document the "off the

clock" hours McCarthy and other recruiters worked.[16]

McCarthy signed a FLSA "Employment Services Consent" form on August 9,

2021[17] and filed suit in this court on August 12, 2021.[18]  Prior to answering the complaint,

Medicus twice moved to dismiss the original complaint on statute of limitations

grounds.[19]  The court denied those motions, Medicus answered the complaint, and the

parties proceeded to discovery.  During discovery, the parties unsuccessfully attempted to

resolve the dispute at mediation.  McCarthy then filed his conditional certification

motion.

## III.   <u>Analysis</u>

### A.   **The applicable standard**

The parties dispute the proper standard to apply.  Medicus argues that because

McCarthy filed the motion "near the end of the case" and the parties have engaged in

---

[14] <u>Id.</u> at ¶¶ 53-54.

[15] <u>Id.</u> at ¶¶ 62-64.

[16] <u>Id.</u> at ¶¶ 56, 63.

[17] <u>See</u> doc. no. 1-1.

[18] <u>See</u> doc. no. 1.

[19] <u>See</u> doc. no. 15.

"extensive discovery," the court should apply the heightened standard applicable to the later, decertification stage discussed above.[20]  McCarthy replies that he should not be prejudiced for pausing the litigation (and delaying the filing of this motion) to attempt to resolve the case at a pre-certification mediation, and the more lenient first-stage standard should apply.  The court agrees with McCarthy, for several reasons.

The conditional certification stage "usually occurs early in a case, before substantial discovery, based only on the pleadings and any affidavits which have been submitted."  Camp, 2019 WL 440567, at *2 (quoting Prescott, 729 F. Supp. 2d at 364-65); see also Waters v. Day & Zimmermann NPS, Inc., 23 F.4th 84, 89 (1st Cir. 2022) (The conditional certification analysis "entails a lenient review of the pleadings, declarations, or other limited evidence . . . to assess whether the proposed members of a collective are similar enough to receive notice of the pending action." (quotation omitted)).  By contrast, the second stage typically occurs after "discovery is complete." Barber, 2022 WL 10598579, at *2.  At this point, the status of discovery falls somewhere in between these two stages.  While discovery related to McCarthy individually is well underway and likely close to completion, the parties have engaged in limited discovery about the putative collective.  To date, Medicus has objected to answering interrogatories or document requests about other putative plaintiffs.

Though McCarthy filed his motion at an atypical procedural stage, courts have applied the lenient standard under similar procedural circumstances, including after the

---

[20] Doc. no. 42-1 at 1.

parties engaged in substantial discovery.  For example, in Drake v. Tufts Associated

Health Maintenance Organization, Inc., the plaintiff initially sought conditional

certification of a broad collective based on the pleadings alone.  No. CV 19-11876-FDS,

2021 WL 2767308, at *2 (D. Mass. Feb. 12, 2021).  The court denied the motion without

prejudice and allowed the parties to conduct discovery on "the shape of the collective, the

basics of job titles' duties, [and the] commonality of the policy."  Id.  Following

discovery, the plaintiff renewed her conditional certification motion, narrowed the

proposed collective definition, and supported her motion with "declarations, deposition

testimony, and documents that indicate[d] that [the collective members] performed

similar job duties."  Id. at *4.  The court applied the lenient standard and granted

conditional certification.  Id. at *3-*4; see also Prescott, 729 F. Supp. 2d at 367 (applying

lenient first stage standard under similar procedural circumstances); Wise v. Patriot

Resorts Corp., No. 04-30091-MAP, 2006 WL 6110885, at *2 (D. Mass. Feb. 15, 2006)

(declining to skip the notice stage even though the "bulk of discovery [was] complete"

because the plaintiffs were "manifestly entitled to take the first step of the two-step

process towards obtaining approval to proceed with their collective action").[21]  This court

---

[21] Medicus cites two cases from the District of Massachusetts that purportedly applied a
heightened or intermediate standard to a conditional certification motion.  See Medicus' Surreply
(doc. no. 47) at 3.  Those cases, however, are factually and procedurally distinguishable from this
one.  See Maldonado v. Cultural Care, Inc., No. CV 20-10326-RGS, 2021 WL 3190890, at *3
(D. Mass. July 28, 2021) (applying an "approach closer to the second stage inquiry" where the
parties had "conducted six months of class discovery," class discovery had closed at the time the
plaintiffs filed the motion, and the case involved putative class action claims under
Massachusetts and California law, requiring a more rigorous showing under Rule 23); Botero v.
Commonwealth Limousine Serv. Inc., No. CIV.A. 12-10428-NMG, 2014 WL 1248158, at *3
(D. Mass. Mar. 25, 2014) (primarily relying on a 1998 decision from the District of Kansas in
support of its application of an "intermediate" standard); see also Yayo v. Museum of Fine Arts,

therefore does not apply a heightened standard based on the timing of McCarthy's filing or the status of discovery, as Medicus requests.

McCarthy also provides a reasonable explanation for the alleged delay in filing. The parties agreed to pause the litigation in order to mediate the case in November 2022. The parties also agreed to toll the statute of limitations for putative collective members.[22] When settlement efforts failed, McCarthy promptly filed his conditional certification motion in early December 2022.  Medicus then asked for and received a 30-day extension of its response deadline to late January 2023.[23]  The motion was not fully briefed until February 7, and even after that, the parties continued to litigate subsidiary, related issues[24] and conduct discovery.  The court took the existing summary judgment deadline off the case calendar at the mid-litigation discovery status conference and plans to impose a new deadline following the issuance of this order.

Lastly, "the prejudice to [McCarthy] of skipping the notice stage could be significant, while prejudice to [Medicus] is minimal since it is able to move for decertification" after the close of discovery.  Prescott, 729 F. Supp. 2d at 366.  Because

---

No. CIV.A. 13-11318-RGS, 2014 WL 2895447, at *4 (D. Mass. June 26, 2014) (proceeding directly to the second stage where "the factual record [was] complete," but nonetheless granting conditional certification).  This authority does not persuade the court to buck the majority of decisional law from this circuit applying the more lenient standard to conditional certification motions.

[22] See Tolling Agreement (doc. no. 37-17).  The court's understanding is that neither party has terminated the tolling agreement to date.

[23] See doc. no. 38.

[24] See doc. nos. 48 and 50.

conditional certification is ultimately a "case management tool," the court exercises its broad discretion to manage its cases and applies the lenient first-stage standard to McCarthy's motion.  Waters, 23 F.4th at 89.

###    B.    The merits

McCarthy seeks to conditionally certify a collective of "[a]ll non-exempt, salaried recruiters who worked for Medicus from September 26, 2019 to present."[25]  He argues that this collective was subject to a single policy that resulted in "at least three" FLSA violations by Medicus: (1) failure to record all hours worked by non-exempt recruiters; (2) failure to pay those recruiters for all hours worked over 40 hours in a week; and (3) in the instances where the company paid overtime, failure to pay at one-and-a-half times the recruiters' regular rates.  Under the common policy, Medicus only paid overtime to recruiters for pre-approved hours or work.  But, if a recruiter worked over 40 hours in a week and did not receive the company's prior approval, Medicus would not pay them overtime pay for this work.  McCarthy further alleges that Medicus had a common policy of not including earned commissions in the recruiter's "regular rate" for purposes of calculating overtime pay.

Medicus counters that McCarthy has failed to make even a modest factual showing that other recruiters were subject to a policy that resulted in them not receiving earned overtime pay; in other words, Medicus contends that it paid overtime wages for all eligible hours.  Medicus further argues that the fact that no other putative collective

---

[25] Doc. no. 37-1 at 1.

members have opted into this suit suggests that there are no similarly situated recruiters. Lastly, Medicus asserts that McCarthy cannot support his conditional certification motion with allegedly new, unpled theories of FLSA liability or unlawful pay practices.  As detailed below, the court finds that McCarthy has made the necessary modest showing to warrant conditional certification and notice to potential collective members.

### 1.     McCarthy's showing

McCarthy alleges that the demands of the recruiter job often require recruiters (including himself) to work over 40 hours per week.  Medicus understands this and knows that recruiters commonly work more than 40 hours each week.[26]  Yet Medicus does not pay overtime wages for all the recruiters' overtime-eligible hours.  Instead, Medicus has a policy of paying overtime to recruiters only for pre-approved overtime hours.[27]  For pre-approved hours, the company pays overtime and documents those payments.[28]  The regular rate used to calculate overtime pay does not include commissions the recruiters received.[29]  For overtime hours or work that are not pre-approved, Medicus pays the recruiters no overtime.[30]

---

[26] FAC at ¶¶ 11-12, 42-44, 49, 54, 56, 81, 84; see also Medicus 2018 Employee Handbook (doc. no. 37-3) at 23.

[27] FAC at ¶¶ 4-5, 11, 48, 50-52; see also doc. no. 35 at ¶¶ 3, 71; Medicus Overtime Policy (eff. Nov. 1, 2016) (doc. no. 37-4).

[28] FAC at ¶¶ 45, 63.

[29] Id. at ¶ 69, 71, 77, 82.

[30] Id. at ¶¶ 47, 53, 58, 61.

McCarthy substantiates these allegations regarding a common plan or policy with a variety of evidence.  For example, he relies on Medicus' pleadings and policy documents, where Medicus admits that it classified certain recruiters as non-exempt and paid them a salary plus commissions.  Medicus also admits that those recruiters performed similar job functions and were subject to the same overtime pre-approval pay policy.[31]  See Clark, 2022 WL 2905356, at *4 (noting that "courts routinely grant certification where the proposed class members' job titles or duties are not exactly the same, as long as they are similar" (quoting Drake, 2021 WL 2767308, at *5 (D. Mass. Feb. 12, 2021))).

In addition, McCarthy reinforces other key allegations with his own deposition testimony, a declaration and deposition testimony from a former recruiter, Anthony Gillis, Medicus' overtime pay policy and employee handbook, and Medicus' sworn answers to interrogatories and requests for admissions.[32]  He also submits evidence that

---

[31] Amended Answer (doc. no. 35) at ¶¶ 67, 71; see also OT Policy (doc. no. 37-4) ("If a Salary Non-Exempt employee has Overtime hours to report," they must "1.) Get overtime pre-approved by your manager[.]  a. If an employee works overtime and it is not pre-approved, the employee is subject to disciplinary action[.]"); Handbook (doc. no. 37-3) at 23-24 ("All overtime work performed by an employee must be pre-approved in advance by his/her manager.  This work rule includes any form of work related electronic communication after the normal workday. Violation of this rule may result in discipline up to and including termination of employment.  It is the employee's responsibility to track hours and submit overtime hours for payment. . . . Medicus is not responsible to pay employee for any overtime hours worked that employee did not submit for payment." (emphasis added)).

[32] See, e.g., McCarthy Deposition (doc. no. 37-2) at 25:18-20, 30:8-21, 62:23-65:11, 127:10-17 (re: regularly working over 40 hours per week and not being paid for all of it, and Medicus' knowledge and expectations), 58, 69, 82-83 (re: policy of overtime payments only for pre-approved hours), 80:7-11 (re: regular rate calculation); Gillis Declaration (doc. no. 37-13) at ¶ 5 (re: regular rate calculation), ¶¶ 5-9, 10 (re: OT pre-approval policy, hours worked, and Medicus' knowledge); Gillis Deposition (doc. no. 44-2) at 68:10-13, 69:3-11 (re: non-payment of overtime

the recruiters' managers discouraged recruiters from seeking overtime pay approval,[33] and that Medicus does not track or record the recruiters' hours if: (i) they do not work over 40 hours in a week; and (ii) they do not complete and submit "overtime justification timecards" for their overtime hours.[34]

This evidence and Medicus' admissions support McCarthy's general theory of collective-wide FLSA liability: that the written overtime pre-approval policy, combined with the company's culture of pushing recruiters to maximize productivity but discouraging them from seeking pre-approval of overtime pay, led to McCarthy and other similarly situated recruiters not receiving all overtime wages to which they were entitled. A pay policy that results in not paying all earned overtime wages to non-exempt workers,

---

prior to June 2018), 73:1-13, 138-39 (re: expectations of working more than 40 hours per week and recruiters regularly working more than 40 hours per week), 127:8-17, 166:2-5 (re: regular rate calculation); Handbook (doc. no. 37-3) at 23 ("Because of the nature of our work, employees may be asked to work overtime on weekends or holidays or additional hours during the regular workday and are expected to comply with such requests."); OT Policy (doc. no. 37-4) ("Medicus is not responsible to pay employee for any overtime hours worked that employee did not submit for payment."). These are non-exhaustive examples of McCarthy's supporting evidence of Medicus' common policy or plan as to the recruiters. McCarthy also submitted deposition testimony from Medicus managerial-level or human resources employees regarding the similarities in the recruiters' work, pay practices, and pay structure. See Shackford Depo. (doc. no. 37-15) at 35:11-36:1; Croke Depo. (doc. no. 37-16) at 44-46.

[33] See, e.g., McCarthy Depo. (doc. no. 37-2) at 30, 57, 62-65, 69-70; Gillis Decl. (doc. no. 37-13) at ¶ 12; Gillis Depo. (doc. no. 44-2) at 54:14-17, 136-137.

[34] See doc. no. 37-4 at 1 ("A timesheet is NOT required if there are no Overtime hours to report" and "Employee is responsible for tracking hours and submitting any overtime for approval in a timely manner"); Medicus' Responses to First Set of Requests for Admission (doc. no. 37-14) at nos. 4 ("Medicus admits that it does not have documents reflecting the hours Mr. McCarthy worked in weeks in which he worked less than forty hours in a week") and 5 (similar answer, but for McCarthy's "stop and start times"); see also Gills Depo. (doc. no. 44-2) at 72:12-18, 166:6-10; Gills Decl. (doc. no. 37-13) at ¶ 10.

the theory goes, violates the FLSA.  See 29 U.S.C. § 207(a)(1); see also 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time"; an employee's reason for doing the work is "immaterial.").

McCarthy has thus made "a modest factual showing" and "assert[ed] substantial allegations that the putative class members were together the victims of a single decision, policy, or plan that violated the law.'"  Barber, 2022 WL 10598579, at *2; see also Norceide v. Cambridge Health All., 814 F. Supp. 2d 17, 29 (D. Mass. 2011) (plaintiffs made "a modest factual showing that the putative class members were all subject to CHA's practice of discouraging its workers from recording time worked before and after their shifts and during their meal breaks, thereby paying its employees based on their theoretical schedules rather than actual time worked").  The court finds that McCarthy has satisfied his "fairly lenient" burden of establishing a reasonable basis for his claim that there are other similarly situated employees in the putative collective.  Prescott, 729 F. Supp. 2d at 364.

### 2.   Medicus' responses

Medicus' main objection to McCarthy's conditional certification request is that the evidence shows that McCarthy and Gillis were paid overtime wages for all work or hours they submitted to the company.  Medicus also argues that alleged inconsistencies in McCarthy's evidence preclude conditional certification.  And it contends that McCarthy admitted certain facts in his deposition that give rise to individualized defenses, further weighing against certification.  Lastly, Medicus says the fact that no other putative

plaintiffs have opted into this suit is "strong evidence there are no similarly situated employees."[35]  The court addresses each of Medicus' arguments in turn.

With its objection, Medicus submitted declarations from several Medicus employees purporting to refute McCarthy's allegations of unlawful pay practices.[36]  It asserts that this rebuttal evidence shows that the company paid recruiters for all properly documented overtime hours worked, whether or not pre-approval was sought and granted.  Faced with this evidence, Medicus contends that McCarthy "changed course" at his deposition and alleged for the first time that he falsified his time records at the direction of his supervisors.  This change, says Medicus, undercuts McCarthy's credibility.  Medicus also points to alleged inconsistencies between McCarthy's testimony and Gillis' testimony about the nuances of the overtime pre-approval policy as proof that a company-wide policy for recruiters did not exist.[37]  For example, it says that Gillis and McCarthy gave different answers as to when the overtime pre-approval policy began, whether pre-approval was required week to week, and whether it applied to "special projects" or any hours worked.

---

[35] Doc. no. 42-1 at 2, 14.

[36] See, e.g., doc. nos. 42-2-42-5, 42-8, and 42-10.

[37] Medicus also argues that Gillis' reliance on hearsay statements from unnamed co-workers undercuts the credibility of his testimony.  Because the "evidentiary standards applicable to the evidence in support of summary judgment do not apply" at the first stage, however, the court does not discount Gillis' declaration on hearsay grounds for purposes of deciding this motion. Barber, 2022 WL 10598579, at *4.  The court will apply those heightened standards to any motion for summary judgment or motion to de-certify the collective.

Medicus' arguments – some or all of which may have merit when considered at

the appropriate time – are inapposite at the conditional certification/notice stage.  For

purposes of this motion, "the court does not resolve factual disputes, decide substantive

issues going to the ultimate merits, or make credibility determinations."  Gardner v.

Fallon Health & Life Ins. Co., Inc., No. CV 4:19-40148-TSH, 2021 WL 4459525, at *3

(D. Mass. Sept. 29, 2021) (quoting Montoya v. CRST Expedited, Inc., 311 F. Supp. 3d

411, 420 (D. Mass. 2018)); see also Gorie v. Amazon.com Servs., LLC, No. 1:20-CV-

01387, 2021 WL 4304281, at *4 (N.D. Ohio Sept. 22, 2021) ("[T]he Court must refrain

from weighing Defendants' competing evidence at this juncture where doing so would

require credibility and factual determinations improper at the conditional certification

stage." (quotations omitted)).[38]

Courts routinely decline to resolve factual or merits disputes or weigh witness

credibility at the conditional certification stage.  For example, in Romero v. Clean

Harbors Surface Rentals USA, Inc., the defendant – like Medicus here – cited its pay

records as evidence that the named plaintiff "did, in fact, receive overtime pay."  368 F.

Supp. 3d 152, 162-63 (D. Mass.), opinion clarified, 404 F. Supp. 3d 529 (D. Mass. 2019).

The court deemed this a "pure factual dispute, which [would] either be reconciled in the

---

[38] Had the court weighed the parties' competing evidence or resolved credibility or fact disputes,
the Medicus' employee declarations would have factored little into the analysis, as such "happy
camper" declarations – if considered at all – are "generally entitled to little or no weight at [the
conditional certification] stage." Spencer v. Macado's, Inc., No. 6:18-cv-00005, 2019 WL
4739691, at *4 (W.D. Va. Sept. 27, 2019); see also Creely v. HCR ManorCare, Inc., 789 F.
Supp. 2d 819, 840 (N.D. Ohio 2011) ("['Happy camper'] affidavits are of little use at this
juncture . . . [T]he Court's function at this stage of conditional certification is not to perform a
detailed review of the individualized facts from employees hand-picked by [Defendant].").

course of discovery or decided by the ultimate fact finder" and could not be resolved "at the conditional certification stage."  Id.; see also Prescott, 729 F. Supp. 2d at 368 (declining to resolve disputes over hours worked, overtime payment, employer pressure, and other merits issues).[39]

Moreover, contrary to Medicus' argument, an employer's policy may be considered "common" despite subtle differences in the alleged policy itself or how the employer implements it.  Medicus admits that the overtime pre-approval policy applied to all recruiters, and the written policy documents reflect that.  McCarthy's testimony about the general sentiment or cultural understanding of how that written policy was implemented also suffices at the conditional certification stage.  Indeed, in some instances, a formal policy is not required to warrant conditional certification.  See Norceide, 814 F. Supp. 2d at 29 ("While not a formal policy, CHA's practice was uniform, effectively depriving workers of compensation for time worked beyond their shifts. As mentioned above, the FLSA is a strict-liability statute, meaning than an employer is obliged to ensure that an employee who could have but did not record all time on the job is properly compensated with a minimum wage and overtime for all time

---

[39] Prescott is analogous to this case in several ways.  In particular, the alleged FLSA violations and unlawful company policy are almost identical, and the plaintiff moved for conditional certification at a similar advanced stage of discovery.  Judge Hornby ultimately concluded that the plaintiff had "made a sufficient showing that disability claims handlers in Maine and New Jersey understood that Prudential, with some exceptions, would not approve payment of overtime and in fact did not pay employees for overtime work they performed" and "that by instituting company-wide metrics for performance, Prudential knowingly created a situation where disability claims handlers would likely work extra hours and in fact did[.]"  Prescott, 729 F. Supp. 2d at 367-68.

actually worked.  Employers and employees do not have equal bargaining power.
Employees, often fearing that they may lose their jobs if they do not oblige, regularly
succumb to employer pressure to perform uncompensated labor." (citing 29 U.S.C. §§
206, 207, and 255(a))).[40]

Medicus also argues that because no other potential collective members have
opted into this case, the court should infer that no similarly situated recruiters exist.
While the lack of other opt-ins may be surprising, neither the FLSA nor the First Circuit
Court of Appeals imposes a duty on named plaintiffs to solicit collective members prior
to conditional certification.  See Litz v. Saint Consulting Grp., Inc., No. CIV.A. 11-
10693-GAO, 2012 WL 549057, at *2 (D. Mass. Feb. 17, 2012) ("Although some courts
have imposed this additional requirement, it has not been adopted by the First Circuit . . .
. To require at this stage a showing that potential class members, who have not been
formally notified, want to join the class is inconsistent with the idea that the preliminary
certification is only 'conditional.'").  The court thus agrees with Judges Elliot and
McAuliffe that "it is premature to require plaintiffs to demonstrate, before notice is given,
that there are other potential members of the collective who are interested in participating
in this litigation."  Barber, 2022 WL 10598579, at *4 (quoting Camp, 2019 WL 440567,
at *4); see also Trezvant v. Fid. Emp. Servs. Corp., 434 F. Supp. 2d 40, 45 (D. Mass.

_____

[40] As discussed above, McCarthy's deposition testimony generally supports the allegations in the
complaint, which is sufficient for purposes of deciding this motion.  McCarthy's new allegations
about fabricating time records may, however, factor into merits or damages determinations,
create credibility issues, or give rise to new defenses for Medicus.

2006) ("[S]ubmission of additional affidavits beyond those of the named plaintiffs is not necessary to make a 'similarly situated' showing[.]").  And while McCarthy appears to know the names of some potential opt-ins, Medicus has refused to provide any information about potential collective members that could facilitate pre-certification solicitation.  If Medicus' theory about the lack of interest in joining this suit is correct, "there exists a second stage where [it] [can] move to decertify the class if in fact no other plaintiffs opt in."  Rossello v. Avon Prod., Inc., No. CIV. 14-1815 JAG, 2015 WL 5693018, at *1 (D.P.R. Sept. 28, 2015).  McCarthy's motion for conditional certification is granted.

### 3.     The collective definition

The parties also disagree about the composition of the collective.  In his motion, McCarthy seeks to conditionally certify a collective of "[a]ll non-exempt, salaried recruiters who worked for Medicus from September 26, 2019 to present."[41]  McCarthy's collective definition is noticeably different than the definition he proposed in his First Amended Complaint:  "All non-exempt salaried recruiters employed by Medicus during the past 3 years who were not paid overtime for all hours worked over 40 in a workweek."[42]  Presumably, he seeks to certify a new, broader collective in order to include recruiters whose "regular rate" for overtime pay purposes did not include

---

[41] Doc. no. 37-1 at 1.

[42] FAC at ¶ 14.  It is also different than the collective identified in McCarthy's proposed notice and consent form.  See doc. no. 37-12.

commissions and for whom Medicus did not properly record all hours worked.  Medicus argues that because McCarthy did not plead these alleged FLSA violations in the operative complaint and has not sought to amend that complaint, recruiters who were subject to these violations cannot be included in the proposed collective.  Medicus also contends that McCarthy has not made even a modest showing for a nationwide collective of recruiters that would include employees who worked at Medicus' now-closed Denver and Houston offices.

Prior to issuing this order, the court held a hearing to question the parties about the composition of the collective and attempt to reconcile the seemingly different proposed collective definitions offered by McCarthy.  At the hearing, the parties agreed that the question of whether Medicus properly recorded the recruiters' hours worked, while unpled in the operative complaint, is a merits question that does not affect the definition of the collective.  The parties further agreed that the definition proposed in McCarthy's motion, with some modifications, best represented the potential collective.

The court therefore conditionally certifies a collective of:  **All non-exempt, salaried recruiters who worked for Medicus from September 26, 2019 to the date the court-approved notice is sent out, excluding those recruiters who worked out of Medicus' Texas or Colorado offices during that time.**

The court notes that this definition potentially includes recruiters who were not paid the correct regular rate for the overtime pay they did receive.  While Medicus argues that McCarthy did not plead this alleged FLSA violation in the operative complaint, the court finds that the complaint (when construed in McCarthy's favor) plausibly includes a

claim encompassing an improper rate calculation.  See, e.g., FAC (doc. no. 17) at ¶¶ 69,

71, 77, 82.  Moreover, the court does not view McCarthy's since-amended interrogatory

answer that Medicus paid him overtime in an "accurate amount according to the law" as a

waiver of his or members of the collectives' right to assert an FLSA claim relating to the

regular rate calculation.  See 29 C.F.R. § 778.117 ("Commissions . . . are payments for

hours worked and must be included in the regular rate . . . regardless of whether the

commission is the sole source of the employee's compensation or is paid in addition to a

guaranteed salary or hourly rate.").  The court also does not include the small number of

recruiters that worked in the Houston or Denver offices during the collective period, as

McCarthy has not made a modest factual showing that those individuals were similarly

situated to McCarthy.[43]

### 4.    Notice

Medicus also objects to several aspects of McCarthy's proposed notice and

consent form and procedure.  Following the conference with the parties, Medicus

submitted its own proposed notice form.  After weighing the parties' positions, the court

adopts the notice and consent forms appended hereto and authorizes McCarthy's counsel

---

[43] The court further notes that the collective, as conditionally certified, does not include
McCarthy himself, as his employment with Medicus ended in November 2018.  While the
recruiters in the collective were employed at different times than McCarthy, he has made a
modest factual showing that they worked similar or identical jobs, were subject to the same
common policy or plan (which continues to the present), were paid the same way, and raise the
same FLSA claims as McCarthy.  Thus, McCarthy has shown – at least for conditional
certification purposes – that he is similarly situated to the recruiters in the collective.

to circulate those forms to all potential collective members in the following manner and

under the following schedule:

1. **No later than 10 days from the date of this order**.  Defense counsel shall
   produce in Excel format, subject to appropriate confidentiality designations, the
   following information regarding putative members of the collective: (1) full name;
   (2) last known mailing address, with city, state, and zip Code; (3) last known e-
   mail address(es) (non-company address if applicable); (4) last known telephone
   number(s); (5) beginning date(s) of employment; and (6) ending date(s) of
   employment (if applicable).  McCarthy "must safeguard" the contact information
   and shall not use "the information provided by [Medicus] for any purpose
   whatsoever other than to effectuate the notice authorized by this order." Curtis v.
   Scholarship Storage, Inc., 2:14-cv-303-NT, 2015 WL 1241365, at *5 (D. Me.
   March 18, 2015) (Torreson, J.).

2. **20 days from the date of this order**.  Plaintiff's counsel shall send a copy of the
   court-approved notice and consent form to the putative collective members by
   First Class U.S. Mail, email, and text message.  Plaintiff's counsel may follow-up
   the mailed notice and consent forms with contact by telephone to former Medicus
   employees or those collective members whose mailed contact information is not
   valid.

3. **60 days from sending notice and consent forms**.  Recipients of the notice and
   consent forms shall have 60 days to return their signed consent forms for filing
   with the court.

4. **30 days from sending notice and consent forms**.  Plaintiff's counsel may send,
   by mail, email, and text message, a second, identical copy of the notice and
   consent form to putative collective members reminding them of the deadline for
   submission of signed consent forms.

## IV.   <u>Conclusion</u>

For the reasons set forth above, McCarthy's motion for conditional certification of

a collective action[44] is GRANTED.  Medicus to produce the above-referenced Excel

---

[44] Doc. no. 37.  Document numbers 48 and 50 are denied without prejudice.

document within 10 days of the date of this order and plaintiff to issue notice and consent

forms as outlined above.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  April 18, 2023

cc:     Alyssa White, Esq.
        Andrew W. Dunlap, Esq.
        Brooke Lois Lovett Shilo, Esq.
        Richard Mark Schreiber, Esq.
        Russell F. Hilliard, Esq.
        Heather M. Burns, Esq.
        Courtney H. G. Herz, Esq.
        James P. Harris, Esq.
        John-Mark Turner, Esq.
        Kenneth W. Gage, Esq.